UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Thomas B. Sparks, et al.

      Appellants,

      v.                                          Case No. 1:06cv670

HSBC Auto finance, fka,                    Judge Michael R. Barrett
Household automotive Finance Corp.,

      Appellee.

## **ORDER**

This matter is before the court upon the Appellants' appeal (Doc. 1) of the Bankruptcy court's Order Regarding Objection to Confirmation.[1] The Appellee has filed a Response to Order to Show Cause (Doc. 8) indicating that it would not be responding to the Plaintiff's brief. Thus, this matter is now ripe for review.

1.    Background.

This case involves a joint bankruptcy petition filed under Chapter 13 by the Appellants.[2] Appellants proposed a plan of reorganization that included Mrs. Sparks retaining ownership of a 2004 Pontiac Grand Prix that she acquired on October 29, 2003, 750 days prior to the bankruptcy filing. In the course of acquiring the car, Mrs. Sparks granted HSBC Auto Finance ("Creditor") a purchase money security interest ("PMSI"). The Creditor filed a proof of claim for $26,186.26 but noted that the assessed value was $19,321.25. The Appellants' plan for reorganization proposed a cram down of the PMSI to $18,237.50 plus interest at a rate of 6.5%. Even though the trustee recommended the

---

[1]This Order can be found at 346 B.R. 767. Case No. 05-24832 (July 26, 2006).

[2]The underlying facts are set forth in Doc. 1 and are not disputed.

plan for reorganization, the Creditor objected to the confirmation of the plan for several reasons.  Of relevance to this Court is the Creditor's objection based upon the hanging paragraph[3] of §1325(a) regarding the inability to cram down the Creditor's debt.  Section 1325(a) states, in relevant parts:

>     (a) ..., the court shall confirm a plan if–
>
>                                 ***
> (5) with respect to each allowed secured claim provided for by the plan--
> (A) the holder of such claim has accepted the plan;
> (B)    (i) the plan provides that--
>            (I) the holder of such claim retain the lien securing such claim until the earlier of–
>            (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>            (bb) discharge under section 1328 [11 USCS § 1328]; and
>            (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>        (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>        (iii) if--
>            (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>            (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
> (C) the debtor surrenders the property securing such claim to such holder;
>
>                                 ***
> For purposes of paragraph (5), section 506 [11 USCS § 506] shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the

---

[3]The last sentence of 11 U.S.C. §1325(a) has been referred to as, "the hanging paragraph," or the "dangling paragraph".

petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49 [49 USCS § 30102]) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

The Bankruptcy Court in finding that the provisions of 11 U.S.C. 1325(a) were mandatory stated that the debtors could not cram down the debt and denied the confirmation of the plan of reorganization.[4]

2.    Issues Presented

The Appellant raises the following six issues to this Court:

    1) Did the Bankruptcy Court commit reversible error in failing to recognize the plain meaning of 11 U.S.C. 1325(a) only sets forth the requirements of when the Bankruptcy Court must confirm a proposed plan and not the requirements of when the Bankruptcy Court may confirm a proposed plan?

    2) Was there reversible error by the Bankruptcy Court in holding that the requirements of 11 U.S.C. 1325(a) are mandatory despite the plain meaning of 11 U.S.C. 1325(a) being discretionary when compared to 11 U.S.C. 1129(a)?

    3) Should the holding by the Bankruptcy Court that the requirements of 11 U.S.C. 1325(a) are mandatory be reversed in failing to follow the persuasive precedents explaining the statutorily discretionary nature of 11 U.S.C. 1325(a) in the cases of: *In re Szrotek*, 886 F.2d 1405 (3d Cir. 1989), *In re Burgess*, 143 Fed. Appx. 692 (7th Cir. 2005); *In re Escobedo*, 28 F.3d. 34 (7th Cir. 1994); *In re Britt*, 199 B.R. 1000 (Bankr. N.D. AL 1996); and *In re Siegfried*, 114 B.R. 358 (Bankr. N.D. NY 1990)?

---

[4]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA") was enacted on April 20, 2005. It is the first wholesale modification of bankruptcy law since the Bankruptcy Reform Act of 1978. The 2005 Act is "effective, except as otherwise provided, 180 days after April 20, 2005 [*i.e.,* on or after October 17, 2005], and inapplicable with respect to cases commenced under Title 11 before the effective date." Pub. L. No. 109-8, § 1501. Thus, it is applicable here.

3

      4) Did the Bankruptcy Court commit reversible error in failing to recognize that decisions holding the requirements of 11 U.S.C. 1325(a) as they existed prior to the effective date of the Bankruptcy Abuse and Prevention and Consumer Protection Act ("BAPCPA") are mandatory did so hold not based on the syntax of 11 USC 1325(a) being statutorily mandatory but rather finding such requirements, as existed prior to enactment of BAPCPA, were substantively mandatory based on principles of equity and substantive due process?

      5) Was there reversible error by the Bankruptcy Court in failing to recognize that 11 U.S.C. 105 empowers the Bankruptcy Court to confirm a proposed plan when: the proposed plan carries out the purpose of bankruptcy reorganization by treating the affected creditors in a fair and equitable manner similar to that contemplated by 11 U.S.C. 1129(b); complies with the mandatory requirements of 11 U.S.C. 1322(a); and if the trustee or unsecured creditor objects, when the proposed plan complies with the mandatory requirements of 11 U.S.C. 1325(b)?

      6) Should the decision of the Bankruptcy Court be reversed when the plain meaning of 11 U.S.C. 1325(a) statutorily affords discretion to confirm a proposed plan in the circumstances of this case to the Bankruptcy Court and despite such plain meaning, there was no conclusion of law finding ambiguity of such discretionary language or conclusion of law finding that the result of such plain meaning of the discretionary language of 11 U.S.C. 1325(a) would lead to a result demonstrably at odds with the intentions of its drafters so as to be compliant with the holding in the case of *In re Palmer,* 219 F.3d 580 (6th Cir. 2000)?

The Court will analyze the six issues presented together as they all relate to whether or not 11 U.S.C. 1325(a) is mandatory, as Judge Aug found, or is discretionary, as Appellants argue.

    3.    Discussion

For all cases arising under Title 11, the United States District Court shall have original jurisdiction. 28 U.S.C. § 1334 (The district courts shall have original and exclusive jurisdiction of all cases under title 11). The District Court has appellate jurisdiction pursuant to 28 U.S.C. 158(a) and Rule 2001(e) of the Federal Rules of Bankruptcy Procedure as a consequence of the timely election made by the Appellants to this Court.  The standard of

4

review towards the bankruptcy court's decision is the, "clearly erroneous standard to findings of fact and de novo review to conclusions of law." *Brady-Morris v. Schilling* (In re Knight Trust), 303 F.3d 671, 676 (6th Cir. 2002) (citing *Stevenson v. J.C. Bradford & Co.* (In re Cannon), 277 F.3d 838, 849 (6th Cir. 2002)). This issue before this Court is arises from conclusions of law made by the Bankruptcy Court.

    I.    Appellants' Argument

Appellants argue that a bankruptcy court's confirmation of a plan under §1325(a) is discretionary based upon the plain meaning of the statute. By discretionary, Appellant contends that the statute guarantees confirmation if a plan complies with the statutory provisions, but that a bankruptcy court may also confirm a plan even when it does not comply. In interpreting §1325 (a), specifically, "the court shall confirm a plan if...", the Appellants argue that "shall" should be defined as when the court "must" confirm the debtor's plan and that since the statute is silent as to when the plan does not meet the requirements that the court may confirm the plan at its discretion. In support of their argument, Appellants compare §1325(a) to 11 U.S.C. §1129(a)(the Chapter 11 confirmation statute). 11 U.S.C. §1325(a) states that "the court shall confirm a plan if ...", where as 11 U.S.C. §1129(a) states that "the court shall confirm a plan <u>only</u> if ..."(emphasis added). Appellants argue that the language within §1129(a) is mandatory because of Congress's use of "only if" and if Congress intended to also make §1325(a) mandatory that Congress would have used "only if" instead of just "if"[5]. Appellants argue that 11 USC §105 gives the Bankruptcy Court the discretionary power to approve a plan that does not

---

[5]Similar plan confirmation sections under Chapter 9 and 12 of Title 11 also state "the court shall confirm a plan if...". See 11 U.S.C. §943(b) and §1225(a).

5

meet the requirements set forth in §1325.

Appellants also argue that the legislative history surrounding the creation of BAPCPA indicates 11 U.S.C. §1325(a) is intended to be discretionary rather than mandatory. Appellants split this argument into two prongs: legislative silence and the evolution of the §1325(a) since the enactment of BAPCPA. Appellants allege that Congress had the chance to change the "longstanding majority judicial interpretation" regarding the mandatory or discretionary nature of §1325(a) and chose not to. (Doc. 4 at 9). Appellants further allege that this legislative inaction is presumed to be legislative acquiescence to this alleged "majority's" prior decisions regarding §1325(a) as discretionary. Next, Appellants argue that the evolution of §1325(a) within BAPCPA indicates that Congress intended for the requirements of §1325(a) to be discretionary rather than mandatory. However, despite Appellants long diatribe as to the legislative history of BAPCPA, Appellants cite no specific language indicating any congressional intent to make the requirements of §1325(a) discretionary.

II.   Analysis

When a case involves an issue of "statutory construction, the starting point is the language employed by Congress." *Chapman v. The Higbee Company*, 319 F.3d 825, 829 (6th Cir. 2003). Thus, if a court is engaged in statutory interpretation it must "look first to the plain language of the statute." *Ltd. v. Comm'r*, 286 F.3d 324, 332 (6th Cir. 2002). Where "the statute's language is plain, the sole function of the court is to enforce it according to its terms." *Chapman*, 319 F.3d at 829. But if the statutory language is ambiguous, "a court may look to legislative history to interpret it." *Office Max, Inc. v. United*

*States*, 309 F. Supp. 2d 984, 992 (D. Ohio 2004) (citing *Ltd.*, 286 F.3d at 332). See also *United States v. Mills*, 140 F.3d 630, 633 (6th Cir. 1998) ("Only when the language of the legislation is unclear should we look beyond the wording of the statute to the intent of the legislature"). To determine the, "plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Pfennig v. Household Credit Servs.*, 295 F.3d 522, 529-530 (6th Cir. 2002) (citing *Household Credit Servs. v. Pfennig*, 541 U.S. 232 (U.S. 2004)). Also, "'every word of a statute must be presumed to have been used for a purpose.'" *Office Max, Inc*, 309 F. Supp. 2d at 993. (Citing *AeroQuip Vickers, Inc. v. Comm'r of Internal Revenue*, 347 F.3d 173, 182 (6th Cir. 2003) (quoting 2A Singer, Norman J., *Sutherland Statutes and Statutory Construction*, § 46.06 at 192 (2000 ed.))

The Court disagrees with Appellant and finds that the plain language of the statute is unambiguous. It clearly states when a plan must be confirmed and does not provide for a scenario when a plan may be confirmed. If Congress had intended for there to be an option for the Bankruptcy Court to confirm a plan that did not meet the requirements set forth in §1325(a) it would have clearly set forth that in the statute. "It is not the Court's role to address perceived inadequacies in [a statute]. What the petitioner asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Palmer v. United States (In re Palmer)*, 219 F.3d 580, 587 (6th Cir. 2000) citing *United States v. Aberl (In re Aberl)*, 78 F.3d 241, 244 (6th Cir. 1996)(quoting *Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1269 (6th Cir.

1989)) (internal quotation omitted; brackets in original).

However, even if the Court should look to legislative history, it does not support Appellant's argument. Congress is presumed to be knowledgeable in regards to case law pertinent to the legislation it enacts. *In re Bunting Bearings*, 302 B.R. 210, 217 (Bankr. D. Ohio 2003) (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185, 108 S.Ct. 1704, 1712, 100 L.Ed.2d 158 (1988) (Congress is presumed to know about existing law pertinent to the legislation it enacts). However, the case law supporting Appellants' argument is not a judicial majority. Appellants rely on *In re Szostek*, 886 F.2d 1405, 1412 (3d Cir. 1989)("§ 1325(a) requires the bankruptcy court to confirm a plan which complies with the statute, although it leaves an area of discretion for the court to confirm a plan which comports with the mandatory provisions of § 1322, but does not meet the conditions of § 1325(a)(5)(B)(i)-(iii)") and *In re Burgess*, 143 Fed. Appx. 692, 695 (7th Cir. 2005)("The proper interpretation of this provision is that if the requirements of § 1325(a) are met, the bankruptcy court must confirm the plan, but if they are not met (but § 1322(a) is satisfied), the bankruptcy court still has the discretion to confirm the plan") as support for their argument.[6]

However, the Ninth Circuit in *Barnes v. Barnes* (*In re Barnes*), 32 F.3d 405 (9th Cir. 1994) held that "the requirement of § 1325(a)(5)(B)(ii) is mandatory" and that "the

---

[6]Additionally, these cases are inapposite to the facts before this Court. In *Szostek* and *Burgess* the creditor did not object to the plan. The *Szostek* Court emphasized that the need for finality with regard to a confirmation order outweighed any reason to permit the creditor, who had remained silent throughout the confirmation process, to raise a post-confirmation challenge under §1325(a)(5)(b)(ii). See Id. at 1413. Here the creditor did timely object. Therefore, the need for finality i.e., to protect the integrity of a confirmed plan against post-confirmation challenges is missing in this case.

8

bankruptcy court cannot confirm a plan of reorganization that does not comply with this requirement." *See also In re Bateman*, 331 F.3d 821 (11th Cir. 2003). In addition, the Supreme Court explained, pre-BAPCPA, that a plan of reorganization must meet the requirements of 1325(a) in order to be confirmed. *Associates Commercial Corp.*, 520 U.S. 953 (1997) ("The plan must satisfy the requirements of section 1325(a)(5)."). Finally, in finding *Szostek* inapplicable to a case before it, a District Court in the Third Circuit, stated:

> The Third Circuit carved out an exception to the general rule that the requirement of § 1325(a)(5)(B)(ii) is mandatory for confirmation by finding that the bankruptcy court had the discretion to confirm a plan that did not comply with § 1325(a)(5)(B)(ii) where the creditor did not object to the plan prior to confirmation. *See Szostek*, 886 F.2d at 1412.
>
> ***
>
> Since compliance with § 1325(a)(5)(B)(ii) is mandatory and the Creditor objected to the Plan prior to confirmation, the bankruptcy court was not permitted to confirm the Plan over Creditor's objection.

*United States, IRS v. Haas (In re Haas)*, 203 B.R. 573, 576 (D. Pa. 1996). Thus, the Appellants' claim that legislative silence and thus acquiescence supports their argument is incorrect. *See also Horr v. Jake Sweeney Smartmart, Inc.,* 2007 U.S. Dist. LEXIS 49063 (D.Ohio, J. Spiegel, July 6, 2007).[7]

The Court further finds that 11 U.S.C. §105 does not provide the Court discretion as argued by Appellants. 11 U.S.C. § 105(a) states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders

---

[7]*Horr v. Jake Sweeney* was decided while this order was in draft form.

or rules, or to prevent an abuse of process.

Section 105 gives the court the power to issue any necessary or appropriate order, but it must be, "constrained to actions or determinations that are 'not inconsistent' with the Bankruptcy Code." *ATD Corp. v. Advantage Packaging, Inc.* (In re ATD Corp.), 352 F.3d 1062, 1066 (6th Cir. 2003). As the First Circuit put it:

> Section 105(a) empowers the bankruptcy court to exercise its equitable powers--where "necessary" or "appropriate"--to facilitate the implementation of other Bankruptcy Code provisions. Although expansively phrased, section 105(a) affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes a roving commission to do equity. Instead, the equitable discretion conferred upon the bankruptcy court by section 105(a) is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code.

*Village of Rosemont v. Jaffee*, 482 F.3d 926, 935-936 (7th Cir. 2007) Citing *In re Ludlow Hosp. Soc., Inc.*, 124 F.3d 22, 27 (1st Cir. 1997) (citations and internal quotations omitted). See also Alan M. Ahart, *The Limited Scope of Implied Powers of a Bankruptcy Judge: A Statutory Court of Bankruptcy, Not a Court of Equity*, 79 Am. Bankr. L.J. 1 at 9 (2005) ("This section does not "give the court the power to create substantive rights that would otherwise be unavailable under the Code."). Therefore, the Bankruptcy Court did not have the discretion to confirm Appellant's plan.

 III.   Conclusion

For the foregoing reasons, the decision of the United States Bankruptcy Court for the Southern District of Ohio is AFFIRMED.

**IT IS SO ORDERED.**

                                                  *s/Michael R. Barrett*
                                                  Michael R. Barrett, Judge
                                                  United States District Court